2016 OK CIV APP 38

TINKER FEDERAL CREDIT UNION,
Plaintiff/appellee,

v.

AAAA WRECKER SERVICE, INC.,
Defendant/Appellant,

and

Martin Remmers and Ashley
L. Hurt, Defendants.

Case No. 113,200

Court of Civil Appeals of Oklahoma,
**DIVISION III.**

FILED OCTOBER 30, 2015
Mandate Issued: 06/27/2016

Bart A. Boren, WILLIAMS, BOREN & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Perry E. Kaufman, Mary B. Scott, GOOLSBY, PROCTOR, HEEFNER & GIBBS, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant.

Opinion by Wm. C. Hetherington, Jr., Chief Judge:

¶ 1 AAAA Wrecker (Wrecker) appeals the denial of its motions for new trial, for summary judgment, and for settlement of the journal entry and enlargement of time. The trial court entered the judgment in favor of Tinker Federal Credit Union (TFCU) following summary proceedings.[1] In that judgment, the trial court found that Wrecker's possessory lien was governed by 42 O.S.Supp.2008 § 91 rather than 42 O.S.Supp.2008 § 91A, and that TFCU's lien had superior priority. The trial court erred by applying § 91 rather than § 91A. Consequently, the judgment was based on an error of law. It is reversed. Wrecker was entitled to judgment on its motions for summary judgment and for new trial, both of which raised the applicability of § 91A. The case is remanded for entry of an order consistent with this opinion.

## STANDARD OF REVIEW

¶ 2 Summary judgment is proper when there are no material facts in dispute. *Indiana National Bank v. State Department of Human Services*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59. A court may look beyond the pleadings at evidentiary materials to decide whether there are any material facts disputed which remain for resolution by the trier. *Id.* "The court may not weigh the evidence, but may only review the evidence to determine whether there is a factual dispute." *Id.*; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730. "All inferences must be taken in favor of the opposing party. *Manora v. Watts Regulator Co.*, [1989 OK 152, ¶ 9,] 784 P.2d 1056 (Okla.1989)." *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, ¶ 7, 894 P.2d 1077, 1079. If reasonable people could differ as to the facts, the matter is not proper for summary judgment. *Indiana National Bank*, ¶ 10, p. 59. A trial court considers factual matters when determining if summary judgment is appropriate, but because the ultimate decision turns on the purely legal determination, *i.e.*, whether one party is entitled to judgment as a matter of law, the appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

¶ 3 We review a denial of a motion for new trial for abuse of discretion. *Head v.*

---

1. The judgment left unresolved any claims regarding the remaining two defendants, Remmers and Hurt. The trial court entered an order making the requisite findings pursuant to 12 O.S. 2011 § 994(A) for appellate review of the final order as to Wrecker and TFCU.

*McCracken,* 2004 OK 84, ¶ 2, 102 P.3d 670, 673. However, when the trial court's exercise of such discretion rests on the propriety of an underlying grant of summary judgment, "the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness." *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 116. Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law. *Id.* "Unless the court either clearly erred in resolving a 'pure simple question of law' or acted arbitrarily, we will not disturb its refusal to grant a new trial." *Ward v. State ex rel. Dept. of Public Safety,* 2006 OK CIV APP 1, ¶ 10, 127 P.3d 643, 644 (citation omitted).

## FACTS

¶ 4 On March 28, 2013, Martin Remmers (Remmers) and Ashley Hurt (Hurt) purchased a 2011 Dodge Charger (the Charger) from Bob Howard Dodge. They traded in a 2006 Saturn and financed the balance of the purchase with TFCU. On May 10, 2013, while Hurt was driving the Charger, the vehicle was involved in an accident. Wrecker towed it away and stored it.

¶ 5 On August 2, 2013, Wrecker executed a Notice of Sale in which it named Remmers, Hurt, and TFCU as potentially interested parties. The Notice of Sale itemized the charges in a section of the notice entitled "DETAIL OF SERVICE(S) PROVIDED" as "Tow Charge $271.90 Storage Fee $1728 TAX $144.72 Processing Fee$ 20.76 TOTAL $2165.37" (capitalization and spacing in original). The notice stated "Storage of Possession" was for the period May 10, 2013, to August 18, 2013, at a charge of $18.00 per day.

¶ 6 TFCU filed a Petition on August 9, 2013, which named Wrecker, Remmers, and Hurt as parties, alleged non-payment of a $27,796.50 promissory note, and sought replevin of the Charger from Wrecker. TFCU alleged Wrecker took possession on or about May 10, 2013, any lien it may have was subordinate to TFCU's lien due to Wrecker's failure "to comply with Oklahoma law," and that "Wrecker's actions are a trespass to chattel" or, in the alternative, conversion. TFCU estimated the Charger's value as $19,975.00 and that the balance due as of August 6, 2013, from Remmers and Hurt was $31,047.44 plus $2.7283 per day in interest. Wrecker filed its answer to TFCU's Petition on September 3, 2013, in which it asserted, *inter alia,* that it held a valid superior possessory lien.

¶ 7 Wrecker filed a Motion for Summary Judgment on January 6, 2014. In its motion, Wrecker claimed its possessory lien was controlled by 42 O.S.Supp.2008 § 91A and it was acting in its capacity as a wrecker operator at the time it towed the Charger from near the intersection of the Broadway Extension and N. 122nd Street. Wrecker denied it was required to comply with 42 O.S.Supp.2003 § 91. Wrecker contended the Oklahoma Administrative Code (OAC) prohibited any towing or wrecking operator from operating a wrecker on public streets unless licensed, citing OAC 595:25–3–1(1).[2] According to Wrecker, it received a request for a tow from the Oklahoma City Police Department on May 10, 2013, it towed the Charger to Hurt's residence so she could unload perishable groceries in the accident-damaged vehicle, and then towed the Charger to its current location in its lot. Wrecker stated TFCU applied for a temporary restraining order and injunction to prevent sale of the Charger, but the order granting the same never became effective due to TFCU's "failure to comply with the bond-posting requirements of title 12, section 1392 of the Oklahoma Statutes." Among the exhibits attached to Wrecker's motion are copies of its Class AA license, a dispatch report generated by Wrecker show-

---

2. Effective since at least 2002, over a decade prior to the events in this lawsuit, this administrative rule has provided:

   **License required.** No operator as defined by law, regardless of storage location, shall operate a wrecker vehicle upon any public street, road or highway of this state for the offering to tow vehicles or to transport property or the actual towing of vehicles or transporting of property without first obtaining from the Department a license as provided in this Chapter. Any wrecker vehicle being operated on any public street, road, highway or turnpike in violation of Oklahoma law or these rules may be removed from service by Oklahoma law enforcement officers. (Emphasis in original.)

ing the customer name as "OCPD OR," Wrecker's DPS #51574 form signed by Hurt,[3] and an affidavit from its Operations Manager which stated that "on May 10, 2013, [Wrecker] received a request by the Oklahoma City Police Department to report to the scene of an accident and provide towing services" for the Charger, that it was towed to and is stored at Wrecker's offices, and Wrecker had not been compensated for towing or storage.

¶8 On January 24, 2014, TFCU filed a combined response to Wrecker's motion and a counter-motion for summary judgment. TFCU contended Wrecker's claim it may not operate without a Class AA license was "not supported by evidentiary material" required by court rules and was "nothing more than an unsupported, and incorrect, legal conclusion." TFCU did not dispute that Wrecker was called to the accident scene by Oklahoma City Police, but it disputed Wrecker's claim it was acting in its capacity as a Class AA wrecker operator because it claimed the Charger was towed at Hurt's request, not law enforcement's request.[4] In support of this assertion, TFCU attached as an exhibit a Department of Public Safety Report of Stored Vehicle Wrecker Services Division form which listed three reasons for impoundment: "By owner's request," "For law enforcement" or "From private property." The form indicated the Charger was impounded "By owner's request." Consequently, TFCU reasoned, § 91A did not apply, § 91 did apply, and its lien had priority because Wrecker did not comply with § 91. TFCU argued § 91A did not provide sufficient notice to interested parties and lien holders, and contended § 91's notice requirements should apply. TFCU alleged that Wrecker converted the Charger, committed trespass, and TFCU was entitled to possession of the vehicle.

¶9 On February 14, 2014, Wrecker filed an untimely combined reply brief and response to TFCU's counter-motion for summary judgment. In a February 21, 2014 e-mail[5] to the parties' counsel, the trial judge noted the matter had been taken under advisement, and that at a hearing the prior day he concluded the issue was one of law and there was no substantial controversy as to material facts. The trial judge concluded § 91 applied, and Wrecker had failed to comply with that section's notice provisions. Wrecker's motion for summary judgment was overruled, TFCU's counter-motion for summary judgment was sustained, and preparation of a journal entry was ordered to be ready for signature in ten days.

¶10 On February 28, 2014, Wrecker filed a Motion to Settle Journal Entry and for Nunc Pro Tunc Enlargement of Time. Based upon alleged excusable neglect caused by newly installed software and docketing deadline conversion, Wrecker asked the trial court to allow filing of the untimely combined reply and response. TFCU filed a response and a counter-motion to settle journal entry on March 18, 2014, in which it argued Wrecker's request to allow filing of the combined reply and response was an inappropriate attempt to retroactively modify the trial court's order or judgment. Wrecker filed a combined response and reply on March 28, 2014, to TFCU's response to Wrecker's motion to settle journal entry and for nunc pro tunc enlargement of time. Wrecker claimed TFCU's proposed journal entry did not accurately reflect the trial court's finding and that the trial court retained discretion to allow a late filing of the combined reply and response because the trial court's findings only addressed the merits of the issue of lien superiority, not the timeliness of the combined reply and response. According to the

---

3. The form was signed by Hurt in three places—one indicating billing was to her and two places under a portion for remarks. A "condition" section was checked for "wrecked." In a section with car outlines entitled "MARK EXTERIOR DAMAGE," areas colored on the outlines included: the front from the passenger side to just short of the driver's side headlight, the left side front quarter panel, the right side rear quarter panel, the front part of the right side front quarter panel, and the left side rear tire.

4. TFCU cited OAC 595:25–1–2 as its authority, but did not specify which of the over 20 unnumbered definitions listed therein was the intended authority.

5. A copy of this e-mail message later appeared in the appellate record as an exhibit to Wrecker's Motion for New Trial and Brief in Support.

trial court docket on April 3, 2014, Wrecker's motion to settle the journal entry and for nunc pro tunc enlargement of time was sustained and an order was signed. No order bearing that date appears in the appellate record.

¶ 11 In a Journal Entry of Judgment filed on April 9, 2014, the trial court sustained TFCU's Counter–Motion for Summary Judgment, struck Wrecker's combined reply and response to that motion as "not timely filed and submitted to the Court in accordance with District Court Rule 4 and Local Rule 37," stated Wrecker's combined reply and response would not be considered, and 'denied Wrecker's Motion for Summary Judgment. The trial court held "OKLA. STAT. TIT. 42 § 91 controls as opposed to OKLA. STAT. TIT. 42 § 91A," found TFCU had "a first and prior lien" on the Charger superior to Wrecker's lien, and granted TFCU immediate possession of the vehicle.

¶ 12 On April 14, 2014, Wrecker filed a Motion for New Trial and Brief in Support. In it, Wrecker contended the trial court erred by failing to apply the unambiguous and unequivocal provisions of 91A. Wrecker also submitted exhibits consisting of OAC code provisions on possessory liens and Packet 752 by the Oklahoma Tax Commission, which included instructions and forms addressing possessory liens and for two processes for giving notice. Wrecker asserted these materials explained the notice required when the possessory lien claimant was not a licensed Class AA wrecker operator, in which case § 91 provisions applied, and that the Oklahoma Tax Commission had directed that the § 91 notice requirements did not apply when a possessory lien was claimed by a licensed Class AA wrecker. Wrecker argued the trial court should show deference to the agency's interpretation of its own rules and treat such an interpretation as persuasive authority, citing *Cox Oklahoma Telecom, LLC v. State of Oklahoma ex rel. Oklahoma Corporation Commission*, 2007 OK 55, ¶ 23, 164 P.3d 150, 160. It argued TFCU's contention that Wrecker engaged in business as a wrecker operator only when it towed or stored a vehicle at the direction of law enforcement was a distinction unsupported in the controlling statutory language. Wrecker asserted applying 91 required it to act in contravention of statutory requirements for Class AA licensed wrecker services and that the failure to apply § 91A resulted in an error of law. Wrecker contended the trial court erred by failing to sustain the portion of its February 28, 2014 motion which requested an enlargement of time for filing of its combined reply and response.

¶ 13 In response to Wrecker's Motion for New Trial, TFCU argued motions for new trial are strongly disfavored and the trial court interpreted and applied the law to "facts as conceded by [Wrecker's] counsel." TFCU quoted statutory provisions pertaining to requirements for placement on official rotation logs for services requested by law enforcement entities and contended these provisions supported its argument that a request from such entities was a key element "required for a wrecker operator to be Class AA." TFCU contended Wrecker "recognizes that mere possession of a Class AA licence does not make every act by the licensee an act to which Okla. Stat. tit. 42, § 91A applies" and that "depending on who requested the tow, a Class AA licensee's status may change so that Okla. Stat. tit. 42, § 91A does not apply." TFCU argued that Hurt requested the tow, so § 91A did not apply. TFCU asserted § 91 and § 91A "must serve different functions, otherwise one of the statutes would be superfluous." According to TFCU, adopting Wrecker's statutory construction "would allow all Class AA wreckers to tow a vehicle upon the request of anyone, but not provide timely notice to lienholders, accumulate exorbitant storage costs, and only then foreclose the purported special lien." TFCU contented Wrecker's statutory construction would allow any company possessing "the Class AA rating" to "skirt Okla. Stat. tit. 42, § 91's notice requirements." TFCU argued Wrecker's exhibit consisting of Oklahoma Tax Commission paperwork was not newly discovered evidence and if Wrecker "wanted to bring this issue up, it should have done so in its original *Motion for Summary Judgment*," (italics in original), but that even if it had done so, "it would not change the result" because the paperwork was not an interpretation and merely recited statutory language

**158**

and provided forms. TFCU contended the trial court did not abuse its discretion in overruling Wrecker's request for enlargement of time and the case law cited by it did not support its excusable neglect argument. TFCU requested that Wrecker's motion for new trial be overruled and that it be granted its attorney fees and costs.

¶ 14 In a Journal Entry filed on June 16, 2014, the trial court denied Wrecker's Motion for New Trial, established a bond amount for a stay, ordered the "return" of the Charger to TFCU by May 30, 2014, ruled TFCU may sell the Charger, and ordered proceeds from any sale to be escrowed until further order of the Court or agreement by the parties. Wrecker moved to certify the judgment as final under 12 O.S.2011 § 994. TFCU responded, stating it had no objection to certification and deferred to the Court on the issue of finality. On August 22, 2014, the trial court ordered the case certified as final under § 994, and this appeal followed.

### THE APPEAL

¶ 15 Wrecker contends the trial court erred in denying its motions for summary judgment, for new trial, and for settlement of the journal entry and enlargement of time. It also alleges the trial court erred by striking its combined reply and response. In the Summary of the Case section in Wrecker's Petition in Error, it contends, *inter alia*, that it responded to the accident scene at the request of Oklahoma City Police, Hurt's consent to towing after that request by law enforcement is irrelevant, it has not been paid for towing or storage, and it has a possessory lien to which § 91A applies. There is no dispute that TFCU has a lien arising from the purchase transaction for the Charger, Wrecker towed the Charger away from the accident scene on May 10, 2013, or Wrecker has a license as a Class AA licensed wrecker service.

¶ 16 Resolution of the parties' controversy requires interpretation of § 91 and § 91A, and administrative code provisions regarding wreckers and towing, as those statutes and provisions existed at the time of the underlying events and the trial court's judgment. When determining whether a statute applies to a given set of facts, the Court focuses on legislative intent, which controls statutory interpretation. *Tulsa County Budget Board v. Tulsa County Excise Board,* 2003 OK 103, n. 22, 81 P.3d 662, 676. "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. The Court presumes that the Legislature expressed its intent and that it intended what it expressed." *Keating v. Edmondson,* 2001 OK 110, ¶ 8, 37 P.3d 882, 886 (footnotes omitted). "However, where a strict, literal interpretation of the statute would lead to inconsistent or incongruent results between the enactment's different parts, judicial interpretation becomes necessary to reconcile the discord." *State ex rel. Oklahoma State Department of Health v. Robertson,* 2006 OK 99, ¶ 6, 152 P.3d 875, 878. "In determining legislative intent, this Court will not limit consideration to one word or phrase but will consider the context of the ambiguous provision." *St. John Medical Center v. Bilby,* 2007 OK 37, ¶ 6, 160 P.3d 978, 979. "Statutory interpretation raises a legal question which is subject to a *de novo* standard of review. An appellate court is endowed with plenary, independent and nondeferential authority to re-examine a trial court's legal rulings." *State ex rel. Department of Transportation v. Little,* 2004 OK 74, ¶ 10, 100 P.3d 707, 711 (footnotes omitted).

¶ 17 On appeal, Wrecker asserts that the trial court erred by applying § 91 rather than § 91A when determining lien priorities. Section 91A(A)(1)(a)(2) of Title 42 provides that it applies to all types of personal property other than " 'Section 91 Personal Property' as defined in Section 91 of this title," and 42 O.S.2011 § 91A(A)(1)(b) provides that "[t]his section applies to any vehicle ... that is excluded from coverage under subsection A of Section 91 of this title" because, under subsection (b)(4) of § 91A(A)(1), that personal property "is otherwise excluded by subsection D of Section 91 of this title."

¶ 18 Section 91(A)(1) provides:

This section applies to every vehicle, all-terrain vehicle, utility vehicle, manufactured home, motorcycle, boat, outboard

motor, or trailer that has a certificate of title issued by the Oklahoma Tax Commission or by a federally recognized Indian tribe in the State of Oklahoma, *except as otherwise provided in subsection D of this section.* (Emphasis added.)

At the time of this controversy, "subsection D of this section" provided, at subsection (D)(4):

Salvage pools as defined in Section 591.2 of Title 47 of the Oklahoma Statutes and class AA licensed wrecker operators in their capacity as wrecker operators shall not be subject to the provisions of this section. Salvage pools as defined in Section 591.2 of Title 47 of the Oklahoma Statutes and *class AA licensed wrecker operators shall be subject to Section 91A of this title.* (Emphasis added.)

Under both § 91 and § 91A, the Legislature provided that Class AA licensed wrecker operators, when acting in their capacity as wrecker operators, are treated differently in how a possessory lien may be acquired.[6] A simple reading of these statutes may appear to answer the question of which statute applies, except that 47 O.S.2011 § 91A(D)(9) contains a limitation on its application which states: "This section applies to class AA licensed wrecker operators *in their capacity as wrecker operators* with respect to all types of personal property, regardless of whether that personal property has a certificate of title." (Emphasis added).

¶ 19 In the trial court, TFCU argued Wrecker was not acting in this capacity and thus § 91A did not apply. Wrecker argued neither the statutes nor the administrative code stated a Class AA wrecker was only acting in the capacity of a wrecker operator when performing towing for law enforcement agencies. Wrecker asserted it *was* licensed and therefore met requirements TFCU references but misconstrues. Wrecker contended TFCU's broad policy arguments about notice ignored the apparent legislative intent to treat Class AA wrecker operators differently than other wrecker operators, ignored

the notice provisions provided in § 91A, and ignored that Wrecker complied with notice provisions in § 91A.

¶ 20 A statutory scheme addressing wreckers and towing services is found at 47 O.S. 2011 § 951, *et seq.*, including definitions for terms "[a]s used in Sections 951 through 965 of this title and Sections 1 through 3 of this act." 47 O.S.2011 § 951. Section 951(6) of Title 47 defines, in pertinent part, " 'Wrecker or towing service' means engaging in the business of or performing the act of towing or offering to tow any vehicle," and 47 O.S. 2011 § 951(3) defines "tow" or "towing" as "the use of a wrecker vehicle to lift, pull, move, haul or otherwise transport any other vehicle by means of: a. attaching the vehicle to and pulling the vehicle with the wrecker vehicle, or b. loading the vehicle onto and transporting the vehicle upon the wrecker vehicle." Section 951(11) provides " 'Operator' means any person owning or operating a wrecker vehicle or wrecker or towing service."

¶ 21 Section 952(B) of Title 47 provides that the Department of Public Safety "shall adopt and prescribe" rules necessary to carry out the intent of § 951, *et seq.* and that such rules

shall state the requirements for facilities, for storage of vehicles, necessary towing equipment, the records to be kept by operators, liability insurance and insurance covering the vehicle and its contents while in storage in such sum and with such provisions as the Department deems necessary to adequately protect the interests of the public, and such other matters as the Department may prescribe for the protection of the public.

Permanent rules governing wreckers and towing services appear in Chapter 25 of Title 595 in the Oklahoma Administrative Code (OAC). According to the definitions found in OAC 595:25-1-2, effective on July 1, 2012, "[a]ny reference to 'this Act' means 47 O.S. § 951 *et. seq.* unless otherwise specified," and "when used in this Chapter," the words and

6. Both statutory sections provide for special possessory liens for rendering services by "furnishing storage, rental space, material, labor or skill for the protection, improvement, safekeeping, towing, right to occupy space, storage or carriage thereof." 42 O.S.2011 § 91(A)(2) and 42 O.S.2011 § 91A(A)(c)(2).

**160**

terms · defined "shall· have the following meaning" unless the· context "clearly indicates otherwise." OAC 595:25–1–2(c) provides: "All rules in this Chapter are subject to the Administrative Procedures Act 75 O.S. § 309, et seq., and to 47 O.S. § 951 et seq., which shall be incorporated herein by reference, as applicable to ·the Department [of Public Service] and all parties governed by this Chapter."

¶ 22 ·The term "wrecker operator" is defined in OAC 595:25–1–2 as "any operator who is licensed [7] under this Chapter and the laws of this state and who.meets all requirements of the rules of this Chapter, pertaining to wrecker vehicles as defined in this Chapter." OAC 595:25–1–2 provides, in pertinent part:

> **"Wrecker"** or **"wrecker vehicle"**, as defined by 47 O.S. § 951, et. seq., means any vehicle, other·than a transport as defined in 47 O.S. § 1–181, equipped with a winch, cable or other device designed to lift,· pull or move a disabled vehicle incapable· of self-propulsion. (Does not include a vehicle . with a push bumper only.)
>
> (A) Class AA—Any· wrecker vehicle not less than nine thousand pounds (9,000 lbs.) GVWR and meeting minimum requirements as established for Class AA Wreckers in this Chapter.
>
> * * * * *
>
> (D) Class General—All other wrecker vehicles as defined by 47 O.S. § 951, et. seq., provided a Class General wrecker shall also be considered a wrecker support vehicle for the purposes of 47 O.S. § 12–218.1.[8]

¶ 23 The administrative rules for wreckers and towing services contain the following definition: " 'Class AA wrecker operator' or 'AA truck wrecker operator' means any wrecker operator who also meets all the requirements of 47 O.S. § 952(D) for towing for

---

**7.** OAC 595:25–1 contains the following definition: **'Wrecker license'** means the wrecker license as provided by 47 O.S. § 951, et seq." (bold in original; no italics in original).

**8.** ·Section 12–218.1, effective November 1, 2010, deals with emergency lighting and other equipment that is not involved in this controversy and does not provide guidance as to definitions or interpretations relevant to this appeal.

law enforcement agencies." OAC 595:25–1–2 (bold in original). The requirements referenced in OAC 595:25–1–2 and set forth in 47 O.S.2011 § 952(D) provide:

> Except as otherwise provided in this subsection, the Department and any municipality, county or other political subdivision of this state shall not place any wrecker or towing service upon an official rotation log for the performance of services carried out pursuant to the request of or at the direction of any officer of the Department or municipality, county or political subdivision unless the service meets the following requirements:
>
> 1. Principal business facilities are located within Oklahoma;
>
> 2 Tow trucks are registered and licensed in Oklahoma; and
>
> 3. Owner is a resident of the. State of Oklahoma or the service is an Oklahoma corporation.
>
> In the event a licensed wrecker or towing service· is not located within a county, a wrecker or towing service that is located outside of the county or this state and does not meet the above qualifications may be placed on the rotation log for the county or any municipality or political subdivision located within the county.
>
> When performing services at the request of any officer, no operator or wrecker or towing service upon the rotation logs shall charge fees in excess of the maximum rates for services performed within this state, including incorporated and unincorporated areas, as established by the Commission.

¶ 24 Similar to the definition found in § 951(6)[9] and citing to that section, OAC 595:25–1–2 provides, in pertinent part, that " 'Wrecker or towing service', 'wrecker service", or 'towing service' means engaging in

---

**9.** The definitions in both § 951(6) and OAC 595:25–1–2 contain exceptions not applicable to this controversy, such as for wrecker vehicles displaying "not for hire" signs, for wreckers owned by governmental entities, for out-of-state wrecker services, for transporters of farm tractors as defined in 47 O.S.2011 § 1–181,.and for transporters of household goods. .

the business of or performing the act of towing or offering to tow any vehicle...." [47 O.S. § 951(6)]." (Emphasis and brackets in original.)

¶ 25 Relevant to TFCU's contention Wrecker was not acting in its capacity as a wrecker operator, we also note the following additional, pertinent definitions: "'Call' means each request for service of an operator resulting in an operator being able to receive compensation for these services"; "'Officer' means any peace officer"; "'Operator' means any person or legal entity owning or operating a licensed wrecker vehicle or a licensed wrecker or towing service and any employee thereof," and "'Owner request tow' means a tow of vehicle made by an operator, or authorized agent of the owner and which is not compelled or required by a law enforcement officer." OAC 595:25–1–2. In addition, OAC 595:25–1–2 contains the following provisions.

> "Law enforcement tow" means a tow of a vehicle made by an operator when a law enforcement officer compels a vehicle to be towed or makes a request for a tow using a law enforcement rotation log and to which the rates and fees as prescribed by the Corporation Commission shall apply.
>
> *****
>
> "Private property tow" means a tow of a vehicle which is made from private property by an operator at the request of the owner, legal possessor, or authorized agent in control of the real property, which shall be towed under the provisions of 47 O.S. § 954A and to which the rates and fees as prescribed by the Corporation Commission shall apply.
>
> *****
>
> "Rotation log" means a list for each Highway Patrol Troop of the Department of current Class AA wrecker operators

whose places of business are within the geographical boundaries of the Troop and who have requested and been approved by the Department to be on the list. This list governs the alternation among approved Class AA wrecker operators meeting the qualification of various categories of Class AA wrecker services except Class AA–TL wrecker vehicles.

> *****
>
> "Tow/Towing" *"means the use of a wrecker vehicle to lift, pull, move, haul or otherwise transport any other vehicle by means of: (a) attaching the vehicle to and pulling the vehicle with the wrecker vehicle, or (b) loading the vehicle onto and transporting the vehicle upon the wrecker vehicle".* [47 O.S. § 951(3) ]

(Italics and bracketed statutory citation in original.)

¶ 26 The May 10, 2013 towing does *not* fall under the definition for a private property tow.[10] Wrecker received a call from a law enforcement officer, namely Oklahoma City Police, Wrecker responded to that call, and the Charger, in a condition described as "wrecked," was towed from the accident scene. When so performing, Wrecker acted in its capacity as a wrecker operator.

¶ 27 Section 91(D)(4) provides that class AA licensed wrecker operators in their capacity as wrecker operators shall not be subject to the provisions of that section and "shall be subject to Section 91A of this title." We will not ignore this statutory language and engraft by judicial construction the additional requirements suggested by TFCU, *i.e.*, an interpretation that licensed Class AA wreckers *only* operate "in their capacity as wrecker operators" and acquire a possessory lien under § 91A if law enforcement both requests and specifically directs it as to towing services.[11] Such requirements would re-

---

10. TFCU noted Wrecker's counsel had stated the statutory application might have been altered if the Charger was unhooked at Hurt's residence. Had this occurred, a subsequent tow could be construed as from private property and also to meet the definition of an "owner request tow." However, this did not occur, leaving, the question of capacity "as a wrecker operator" for determination.

11. Such a construction would appear to allow § 91A to apply only when law enforcement impounded a vehicle for evidence, when a vehicle was abandoned, or when a vehicle was towed without the permission of an owner, legal possessor, or authorized agent. *See* 47 O.S.2011 § 951(10), 47 O.S.Supp.2010 § 954A, and 47 O.S.2011 § 955. Further, the Legislature has provided requirements for notice and the foreclosure of special liens for expenses incurred re-

quire adoption of an interpretation rendering nugatory portions of the statutory scheme here reviewed. Class AA is a licensing status dependent upon meeting statutory classifications regarding equipment, the physical location of the wrecker operator's business, tow truck licensing and registration, the residency of a company's ownership, fee limitations, and placement on law enforcement rotation logs (even when not meeting other qualifications, *see* § 952(D)) when no licensed wrecker or towing service is located in a county. Whether the May 10, 2013 towing met all qualifications for a "law enforcement tow" was not dispositive regarding the applicability of § 91A. Wrecker was called to the accident scene by police, and it then towed and stored the Charger, all of which were actions taken in the capacity of a wrecker operator. Wrecker's Class AA licensing status did not disappear because, after Wrecker had responded to a law enforcement request for towing, Hurt signed a form which authorized removal of the Charger from the accident scene.

¶ 28 The words or phrases used by the Legislature are to be understood in the context of all of the statute and not in an abstract sense. *Matter of Estate of Little Bear*, 1995 OK 134, ¶ 22, 909 P.2d 42, 55. "[W]here the meaning of the former statute was subject to serious doubt, or where controversies concerning its meaning had arisen, it may be presumed that the amendment was made to more clearly express the legislative intention previously indefinitely expressed." *Magnolia Pipe Line Co. v. Oklahoma Tax Commission*, 1946 OK 113, ¶ 11, 196 Okla. 633, 167 P.2d 884, 888. We may look to subsequent amendments to ascertain what the Legislature previously intended. *Hollytex Carpet Mills v. Hinkle*, 1991 OK CIV APP 43, ¶ 11, 819 P.2d 289, 291–292. Effective November 1, 2014, subsection D of § 91 was amended by deleting subsection D(4) and adding subsection (A)(2)(b), which provides, in pertinent part, that:

> class AA licensed wrecker services taking possession of a vehicle pursuant to an agreement with or *at the direction of, or dispatched by, a state or local law enforcement or government agency*, or pursuant to the abandoned vehicle renewal provisions of Section 954A of Title 47 of the Oklahoma Statutes, *shall not be subject to the provisions of this section, but shall be subject to the provisions of Section 91A of* this title. *Unless otherwise provided by this subparagraph*, class AA licensed wrecker services performing consensual tows shall be subject to the provisions of this section (emphasis added).

Also effective November 1, 2014, § 91A(D)(9) was amended to provide:

> *This section applies to class AA licensed wrecker services* taking possession of a vehicle pursuant to an agreement with, or *at the direction of, or dispatched by a state or local law enforcement or government agency*, or pursuant to the abandoned vehicle removal provisions of Section 954A of Title 47 of the Oklahoma Statutes with respect to all types of personal property, regardless of whether that personal property has a certificate of title (emphasis added).

Consequently, under either the statutes applicable at the time of this controversy or those subsequently enacted, § 91A applies.

¶ 29 The trial court erred as a matter of law by concluding § 91 applied to Wrecker's lien. The Journal Entry of Judgment denying Wrecker's motion for summary judgment and granting the motion for summary judgment of TFCU is premised on an error of law. Wrecker was entitled to judgment on its motion for summary judgment under § 91A as a matter of law.

¶ 30 When determining whether the trial court abused its discretion in denying Wrecker's Motion for New Trial, we review the record and the arguments raised in favor of the motion. Where, as here, our assessment of the trial court's exercise of discretion in denying a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudica-

garding abandoned vehicles in provisions for sale under 47 O.S.2011 § 908 through 47 O.S.2011 § 911 when a "vehicle's removal has been authorized by any public agency." 47 O.S.Supp. 2006 § 951(A).

tion's correctness. *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 107. Wrecker premised its Motion for New Trial on the applicability of § 91A. The trial court's Journal Entry denying Wrecker's Motion for New Trial is REVERSED. No allegations of error directly address the portion of the Journal Entry setting bond, allowing for sale of the Charger or placement of any sales proceeds in escrow pending further trial court orders or agreement of the parties. The matter is RE-MANDED for further proceedings consistent with this opinion.

¶ 31 Lastly, we address Wrecker's contention the trial court erred by striking its combined reply and response to TFCU's counter-motion for summary judgment because it was filed untimely. The trial court acted within its discretion as to the untimely filing and no abuse is demonstrated. No reversible error is presented.

## CONCLUSION

¶ 32 The trial court erred in applying § 91 rather than § 91A to this controversy over the priority of liens between a Class AA licensed wrecker operator and TFCU. The Journal Entry of Judgment granting TFCU's counter-motion for summary judgment and denying Wrecker's motion for summary judgment is REVERSED, the Journal Entry denying Wrecker's Motion for New Trial is REVERSED, and the cause is REMANDED for proceedings consistent with this opinion.

**REVERSED AND REMANDED**

MITCHELL, P.J., and JOPLIN, J., concur.