HOLLYTEX CARPET MILLS,
INC., Petitioner,

v.

Teresa L. HINKLE and the Workers'
Compensation Court, Respondent.

No. 76096.

Court of Appeals of Oklahoma,
Division No. I.

May 7, 1991.

Gary C. Pierson, Tony G. Puckett, Lytle, Soule' & Curlee, Oklahoma City, for petitioner.

Sidney A. Musser, Jr., Harry L. Kouri, III, Abel, Musser, Sokolosky & Clark, Oklahoma City, for respondent.

## MEMORANDUM OPINION

BAILEY, Judge:

Petitioner Hollytex Carpet Mills, Inc. (Employer) seeks review of an order of the Workers' Compensation Court sitting *en banc* which affirmed the Trial Court's award of permanent partial disability (PPD) to Respondent Teresa L. Hinkle (Claimant). Herein, Employer asserts (1) error in admission of Claimant's medical evidence, not in compliance with the correct edition of the AMA *Guides for Evaluation of Permanent Impairment* (AMA *Guides*), and (2) lack of competent evidentiary support for the lower court's order.

Claimant filed her Form 3 in October, 1989 claiming compensable injury to lungs due to on-the-job exposures to carpet fiber. Evidence at trial showed that in the course of her employment, Claimant breathed "fly away" carpet fibers present in the work environment, that the air-quality of the work environment was of some concern to Employer, and that Employer made available "dust masks" for the employees' use. Employer asserted that "fly away" fibers were not a problem in Claimant's work area.

On September 11, 1988, while at work, Claimant experienced shortness of breath and chest pains. Claimant finished the work day and went home. Later that night when her chest pains did not subside, Claimant went to the local hospital emergency room for examination, after which Claimant was released with a diagnosis of "possible pneumonitis [with] reactive component to work condition."

In support of the claim, Claimant offered the medical report of Dr. L., wherein Dr. L. found that Claimant had "sustained irritation of the lungs from exposure to lint in the air," that Claimant "has also developed asthma as a result," and that Claimant suffered twenty-two percent (22%) impairment according to the Second Edition of the AMA *Guides*. Employer objected, arguing that Dr. L.'s report was fatally flawed for failure of Dr. L. (1) to conduct his evaluation in conformance with the Third Edition of the AMA *Guides*, and (2) to set forth the results of his testing as required by the AMA *Guides*. The Trial Court took Employer's objection under advisement.

In opposition to the claim, Employer offered, *inter alia* and without objection by Claimant, the medical report of Dr. Y. Dr. Y. found that Claimant sustained no job-related lung or respiratory system impairment under the standards of the Third Edi-

tion of the AMA *Guides*. Employer also introduced a report from Dr. B., a radiologist, who, on the date of onset of Claimant's chest pains and examination at the emergency room, found "no acute chest disease."

In its final order, the Trial Court subsequently found Dr. L.'s report competent and in substantial compliance with the correct edition of the AMA *Guides*, overruled Employer's objection and admitted Dr. L.'s report into evidence. Based on the evidence, the Trial Court further found Claimant to have sustained "an occupational disease consisting of injury to the LUNGS due to CUMULATIVE EXPOSURE to harmful dust, smoke and fumes ... [such exposure being] peculiar to or characteristic of claimant's employment," and "as a result of said occupational disease," granted Claimant benefits for twelve percent (12%) PPD "to the body as a whole due to injury to the lungs (lung injury resulting in asthma)." On the parties' counter-appeals, a divided Court *en banc* affirmed.

Employer now seeks review as aforesaid. Because we view Dr. L.'s report as the only medical evidence adduced below supporting the lower court's order, we address Employer's challenge to the competency thereof first.

We initially observe the evidence showed that Claimant's injury apparently first manifested itself in September, 1988, and that Dr. L. conducted his examination of Claimant on September 26, 1989. At that time, Oklahoma law mandated:

> ... [A]ny examining physician shall only evaluate impairment in accordance with the latest "Guides to the Evaluation of Permanent Impairment" adopted and published by the American Medical Association.

85 O.S.Supp.1988 § 3(11).[1] We find, and the parties point out, only three decisions

1. We note that the requirement of reference to the "latest" edition of the AMA *Guides* first appeared in 85 O.S.Supp.1985 § 3(11). However, effective September 1, 1990, the Legislature amended § 3(11), and that section now provides:

> ... [A]ny examining physician shall only evaluate impairment in accordance with the latest publication of the American Medical Association's "Guides to the Evaluation of Permanent Impairment" in effect at the time of the incident for which compensation is sought.

85 O.S.Supp.1990 § 3(11).

of our Supreme Court construing § 3(11) which expressly or implicitly discuss the issue of which of the three AMA *Guides* editions should be followed in a particular case.[2]

In *York v. Norton Manufacturing Co.*, our Supreme Court held, because claimant's medical evaluations took place before publication of the AMA *Guides*, Third Edition, "[c]learly, the second edition was the appropriate standard by which to determine [claimant's] impairment."[3] In *Davis v. B.F. Goodrich*, while tacitly approving evaluation of impairment under AMA *Guides*, Second Edition, where claimant's last hazardous exposure occurred in 1986, the Supreme Court found employer's medical evaluation not in substantial compliance with the Second Edition, therefore not competent to support lower court's denial of benefits, and remanded the case for further proceedings.[4] In *Orrell v. B.F. Goodrich*, the Supreme Court likewise tacitly approved application of the AMA *Guides*, Second Edition, as the edition in effect at the time of the injury, i.e., "last hazardous exposure," and remanded for consideration of all competent medical evidence, including, if the parties so desired, presentation of "new evaluations and medical evidence ... controlled by the 1988 Guides [Third Edition] by the force of 85 O.S.Supp.1987

§ 3(11) ... mandat[ing] evaluation of impairment utilizing the latest AMA *Guides*."[5]

Thus, as we read these cases, while *Davis* implicitly approves application of the edition of the AMA *Guides* in effect at the time of injury, and as such holding consistently with 85 O.S.Supp.1990 § 3(11) and the 1990 amendment to Workers' Compensation Act Court Rule 21, *York* and *Orrell* appear to require application of the edition of the AMA *Guides* in effect at the time of the evaluation. However, each of these cases may be factually distinguished from the present case, in that in all three of the cited cases, the AMA *Guides*, Third Edition, had not yet issued at the time of either occurrence of the injury or conduct of the questioned medical evaluations, and we hence find the cited cases of little assistance in deciding the issue presented herein.

We must therefore attempt to ascertain our Legislature's intent in the pre–1990 amendment version of § 3(11) in requiring medical evaluations to adhere to the "latest" edition of the AMA *Guides*. To that end, where the intent of a statute is unclear, and the Legislature has subsequently amended the statute in question, we may look to the subsequent amendment

---

We further note the Workers' Compensation Court has adopted a similar rule, effective November 1, 1990:

A. Except as otherwise provided in Rules 32 and 33 [governing evaluation of hearing and vision impairment], a physician's evaluation of the extent of permanent impairment shall be prepared in substantial compliance with the AMA Guides to the Evaluation of Permanent Impairment.

B. The Third Edition of the AMA Guides shall be used to rate permanent impairment as a result of injuries occurring on or after January 1, 1989. Editions of the Guides published after January 1, 1989, shall be effective one hundred twenty (120) days from the last day of the month of publication.

.    .    .    .    .

D. Injuries occurring prior to January 1, 1989 are to be evaluated by the following editions of the Guides:
Injuries occurring on or after July 1, 1978 through October 31, 1984—First Edition;
Injuries occurring on or after November 1, 1984 through December 31, 1988—Second Edition;

Injuries occurring prior to July 1, 1978 are to be evaluated based upon the claimant's ability to perform "ordinary manual labor."
Rule 21, Workers' Compensation Court Rules, 85 O.S.Supp.1990, Ch. 4, App.
Thus, although the previous statutes and Workers' Compensation Court rules did not, with sufficient specificity, direct which addition should be consulted other than the "latest" edition, both current Oklahoma law and Workers' Compensation Court rules now require application of the edition of the AMA *Guides* in effect at the time of occurrence of the injury for which compensation is sought.

**2.** See, *York v. Norton Manufacturing Co.,* 803 P.2d 697 (Okl.1990); *Davis v. B.F. Goodrich,* —— P.2d —— (Okl.1990), 61 O.B.A.J. 3131 (November 27, 1990, pending rehearing); *Orrell v. B.F. Goodrich,* 787 P.2d 848 (Okl.1990).

**3.** *York v. Norton Manufacturing Co.,* 803 P.2d at 699–700.

**4.** *Davis v. B.F. Goodrich,* 61 O.B.A.J. at 3132.

**5.** *Orrell v. B.F. Goodrich,* 787 P.2d at 851, 854.

to ascertain what was previously intended:[6]

> ... [W]here the meaning of the former statute [is] subject to serious doubt, or where controversies concerning its meaning [have] arisen, it may be presumed that the [subsequent] amendment [of the questioned statute] was made to more clearly express the legislative intention previously indefinitely expressed.

Thus, and because we find the pre–1990 version of § 3(11) unclear as to which edition of the AMA *Guides* to be consulted in any particular case, we find the 1990 amendment thereto must be presumed "to more clearly express the legislative intention previously indefinitely expressed."[7] The Legislature having unequivocally mandated in the 1990 amendment to § 3(11) that the edition of the AMA *Guides* in effect at the time of the injury controls, under the predecessor § 3(11), we hold Dr. L.'s report of evaluation, showing on its face to have been conducted in accord with the AMA *Guides*, Second Edition, i.e., the edition in effect at the time of Claimant's alleged injury, to have been conducted under the correct edition of the AMA *Guides*. We consequently find no error by the lower court in so holding.

■ However, and as to Employer's second proposition of error, a cursory review of the "four corners" of Dr. L.'s report nevertheless reveals "an unexplained, facially apparent and substantial deviation" from the AMA *Guides* and Rule 20, Rules of the Workers' Compensation Court.[8] That is to say that Rule 20(C) requires a physician to set forth in his report "the physician's findings on examination, including a description of the examination and any diagnostic tests," while the AMA *Guides* themselves require a physician's opinion as to degree of respiratory impairment/disability to be based on the results

of two spriometric maneuvers and the ratio thereof, i.e., forced vital capacity (FVC), forced expiratory volume in the first second ($FEV_1$) and the ratio of these results ($FVC/FEV_1$).[9] In the present case, Dr. L.'s report contains none of the raw data from Claimant's spirometric maneuvers as required by Rule 20(C), and Dr. L.'s opinion shows on its face to be based on below-lower-limit-of-normal findings on only two of the tests, FVC and $FEV_1$, without a finding as to the result of the ratio of FVC and $FEV_1$ as required by the AMA *Guides*, Second Edition.

This being the case, we find Dr. L.'s report incompetent under the AMA *Guides*, Second Edition, and the lower court's findings to the contrary in error. Because Dr. L.'s report is incompetent, and because Dr. L.'s report stands as the only evidence supporting the lower court's award of benefits, we further conclude that the lower court's award of benefits must be vacated. Nevertheless, and considering the obvious confusion fostered by the lack of sufficient specificity in the pre–1990 version of § 3(11), and further considering the ultimate holding in *Gaines v. Sun Refinery and Marketing*, we believe the matter should be remanded to the Trial Court in order that Claimant be allowed to obtain amended medical evidence in compliance with the AMA *Guides*, Second Edition, as we have construed the requirements thereof in this opinion.

The order of the Workers' Compensation Court sitting *en banc* is therefore VACATED, and the cause REMANDED for further proceedings not inconsistent herewith.

ADAMS, P.J., and GARRETT, J., concur.

**6.** *Cty. Bd. of Equalization, Pittsburg Cty. v. Muskogee Industrial Finance Corp.*, 357 P.2d 224, 227–228 (Okl.1960); *Magnolia Pipe Line Co. v. Oklahoma Tax Comm.*, 196 Okl. 633, 167 P.2d 884, 888 (1946).

**7.** *Cty. Bd. of Equalization, Pittsburg Cty.*, 357 P.2d at 228; *Magnolia Pipe Line Co.*, 167 P.2d at 888.

**8.** *Gaines v. Sun Refinery and Marketing*, 790 P.2d 1073, 1077 (Okl.1990); *Whitener v. South Cent. Waste Auth.*, 773 P.2d 1248, 1251 (Okl. 1989); *LaBarge v. Zebco*, 769 P.2d 125, 127–128 (Okl.1988); *Perlinger v. J.C. Rogers Const. Co.*, 753 P.2d 905, 907 (Okl.1988).

**9.** AMA *Guides*, Second Edition, Ch. 3, pp. 86, 87–89.