1998  OK CIV APP  128

**William R. McGUIRE and Nancy L. McGuire, Appellees,**

v.

**Micki MORRISON and Steve Dressler, Appellants.**

No. 89148.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 14, 1998.

Marjorie J. Ramana, The Devore Law Firm, Oklahoma City, for Appellants.

Stefanie Loriecki, Sapulpa, for Appellees.

JOPLIN, Judge:

¶ 1  Micki Morrison (Mother of the minor children, J.W.D. and E.M.M., hereinafter Mother) and Steve Dressler (Father of J.W.D. and step-father of E.M.M., hereinafter Father, or collectively with Mother, Parents) seek review of the trial court's order denying their motion for new trial/motion to vacate/motion for change of venue/motion to terminate grandparental visitation after the trial court granted

grandparental visitation to maternal grandparents, William R. McGuire[1] and Nancy L. McGuire (Grandparents). In this appeal, Parents assert (1) denial of their constitutional right of due process, and (2) lack of evidentiary support for the trial court's judgment. Having reviewed the record, while we find no constitutional deprivations as alleged, we nevertheless find the trial court's judgment fundamentally flawed, and hold the order of the trial court should be reversed and the cause remanded for further proceedings.

¶ 2 Mother is the adopted daughter of Grandmother, and E.M.M. is the adopted daughter of Mother. Over the course of time, Mother and Grandmother became estranged. Knowing E.M.M. suffered severe emotional problems, Mother contacted the Childrens' Medical Center of Tulsa where E.M.M. later received both in-patient,out-patient, and weekly therapy. After many months of individual counseling with E.M.M., E.M.M.'s therapist suggested that E.M.M.'s visitation with Grandmother be curtailed. Grandparents thereafter filed a petition seeking court-ordered grandparental visitation under 10 O.S.1991 § 5.

¶ 3 At the hearing thereon, Parents appeared, requesting an interpreter due to Father's hearing impairment; however, and for whatever reason, no interpreter was then provided. At the conclusion of the hearing, the trial court granted Grandparents visitation consistent with that granted to a non-custodial parent. Thereafter, Parents timely filed motions to vacate, for new trial, for change of venue, and to terminate grandparental visitation.[2] After an evidentiary hearing, the trial court granted Parents' motion for new trial in part, thereby restricting Grandmother (1) from taking E.M.M. to visit E.M.M.'s biological mother, and (2) from administering corporal punishment upon J.W.D. and E.M.M. during visitation. The trial court denied all other motions. Parents appeal.

¶ 4 Parents first challenge the trial court's denial of their request for an interpreter at the first hearing as depriving Parents, and particularly Father, of fundamental due process. See, e.g., 63 O.S. Supp.1995 § 2409 ("In any case before any court ..., wherein a person who is unable to hear the proceedings due to physical disability, such as deafness or other physical conditions, and is a complainant, defendant or witness, the court shall, upon request, appoint a qualified interpreter to interpret the proceedings to the deaf person and interpret his testimony or statements and to assist in preparation with counsel"); Matter of K.S., 1982 OK 139, ¶ 9, 654 P.2d 1050, 1052 ("'The right of a parent to the companionship, care, custody and management of his/her child is a basic fundamental right protected by the United States and Oklahoma Constitutions'"); Baker v. Baker, 1995 OK CIV APP 111, ¶ 14, 904 P.2d 616, 619 ("'Due process requires adequate notice, a realistic opportunity to appear and the right to participate in a meaningful manner.'") However, the record on appeal contains no transcript of the first hearing against which to measure the merits of this complaint. Without a record of this hearing, and in view of the record of the hearing on Parents' post-judgment motions reflecting (1) that the case was essentially then re-tried with both an interpreter then present and Parents allowed the present testimony of witnesses and documentary evidence, and (2) that the trial court subsequently granted Parents some relief from its previous order, we cannot say Father suffered a deprivation of due process as to warrant reversal the trial court's order on this ground. Accordingly, we reject this argument.

¶ 5 Parents also challenge 10 O.S. § 5 granting grandparental visitation as impermissibly and substantially infringing on their fundamental, constitutionally protected parental rights to the companionship, care, custody and management of their child(ren). Indeed:

---

1. Mr. McGuire passed away during the proceedings below.

2. Grandmother's application for contempt and application for an order allowing participation in family counseling was denied. Grandmother does not appeal these rulings.

·... The right of a parent to the companionship, care, custody and management of his/her child is a basic fundamental right protected by the United States and Oklahoma Constitutions. (Footnote omitted.) The right of visitation in the absence of a statute derives from the right to custody. A grandparent who has no right to the custody of the child is not entitled to an award of visitation rights. A parent is under no legal obligation to permit a child to visit its grandparents in the absence of a statute.....

*Leake v. Grissom*, 614 P.2d 1107, 1110(Okla.1980). *Accord, Matter of K.S.*, 1982 OK 139, ¶ 9, 654 P.2d at 1052.

■■■ ¶ 6 As a matter of constitutional analysis, "[c]ourts will uphold· a statutory classification if a rational relationship exists between that classification and the state interest (citations omitted) [but] [w]henever a challenged classification ... burdens the exercise of a fundamental right, the strict-scrutiny standard will be applied. (Citation omitted.)" *Black v. Ball Janitorial Service, Inc.*, 1986 OK 75, ¶ 7, 730 P.2d .510, 515 fn. 8. Under the strict-scrutiny standard, the classification must touch on a matter of compelling state interest in necessary furtherance of the underlying purpose in order to survive strict-scrutiny analysis. *See, e.g., Mistletoe Express Service v. United Parcel Service, Inc.*, 1983 OK 27, ¶ 20, 674 P.2d 1, 9.

· ¶ 7 While we find no Oklahoma cases on point, other states addressing the issue have recognized that, considering parents' fundamental rights to the care, custody and control of their children, protection of children from harm constitutes the *sine qua non* compelling state interest in testing grandparental visitation statutes. *Beagle v. Beagle*, 678 So.2d 1271 (Fla.1996) (where statute requires no showing of harm to children absent grandparental visitation, statute violates fundamental right of parents); *accord, Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769 (1995). On the other hand, other states have recognized that protection of a child's best interests constitutes a sufficiently compelling state interest to uphold grandparental visitation statutes. *Sibley v. Sheppard*, 54 N.Y.2d 320, 445 N.Y.S.2d 420, 429 N.E.2d 1049 (1981) ("[p]rotecting the best interest of the child is unquestionably a proper exercise of the police power"); *Herndon v. Tuhey*, 857 S.W.2d 203 (Mo.1993) (statute granting grandparental visitation premised on best interests of child and proscribing visitation if visitation would endanger the child physically, mentally, or emotionally, held constitutional); *King v.. King*, 828 S.W.2d 630 (Ky. 1992) (strengthening of familial ties and preservation of family/generational contact held of compelling state interest.) *Contra, Hawk v. Hawk*, 855 S.W.2d 573 (Tenn.1993) (best interest of child not a compelling state interest, and grandparental visitation under statute without requirement of harm to child held unconstitutional).

¶ 8 "The child's best interest is the test for·granting or denying [grandparental] visitation. *In re Bomgardner*, [1985 OK 59, 711 P.2d 92] at 97." *In the Matter of D.S.*, 1991 OK CIV APP 9, ¶ 11,·806 P.2d 1143, 1145. The threat of harm, physical or emotional, has always been at the center of the best-interest-of-the-child test in Oklahoma. *See, e.g.,* 43 O.S.1991 § 109(A) ("In awarding the . custody of a minor· unmarried child or in appointing a general guardian for said child, the court shall consider what appears to be in the *best interests* of the *physical* and *mental* and *moral welfare* of the child"); *Nelson v. Nelson*, 1998 OK 10, 954 P.2d 1219 ("liberty interest of the parent must be balanced against the best interests of the child," "child's interest are paramount," and a parent's inconvenience subordinated to the need to protect the child's welfare); *Gibbons v. Gibbons*, 1968 OK 77, 442 P.2d 482, 485 (custody changed only if shown a permanent, substantial and material change of conditions directly affecting best interests of the minor child, and child would be substantially better off, "with respect to its *temporal* and its *mental* and *moral welfare,* if the requested change in custody" ordered). In this particular, inasmuch as(1) protection of the best interests of children constitutes a valid and compelling state interest, and (2) the Oklahoma best-interest-of-the-child test contemplates an examination of potential harm to the child(ren) in the grandparental visitation calculus, we here hold § 5 granting grandparental visitation meets constitutional muster.

¶ 9 That said, however, in the context of weighing parents' rights against those of their child(ren)'s grandparents to visitation, at least one other state has held that grandparents' rights to visitation are not co-extensive or equal with those of a parent. *See, e.g., Herndon,* 857 S.W.2d at 210–211.[3] Arguably so recognizing, and while 10 O.S. § 5 granting grandparents reasonable visitation with their grandchildren did not at the time of hearing in the instant case provide any guidance in this respect, the Oklahoma Legislature subsequently enumerated six factors which the trial court *must* consider in deciding the "best-interests-of-the-children" issue when determining whether and under what circumstances grandparental visitation should be granted:

1. The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents;

2. The length and quality of the prior relationship between the child and the grandparent or grandparents;

3. The preference of the child if the child is determined to be of sufficient maturity to express a preference;

4. The mental and physical health of the child;

5. The mental and physical health of the grandparent or grandparents; and

6. Such other factors as are necessary in the particular circumstances.

10 O.S. Supp.1997 § 5(B) (eff. Nov. 1, 1997.) We here construe 10 O.S. Supp.1997 § 5(B) to more clearly express the legislature's intent indefinitely expressed in the previous version of § 5 in effect at the time of hearing in the present case. *Hollytex Carpet Mills v. Hinkle,* 1991 OK CIV APP 43, 819 P.2d 289 (subsequent amendments indicative of previous intent); *accord,Magnolia Pipe Line Co. v. Oklahoma Tax Commission,* 196 Okla. 633, 636, 167 P.2d 884, 888 (1946). *See also, In re Bomgardner,* 1985 OK 59, ¶¶ 13–15, 711 P.2d at 97.[4] Under these circumstances, and recognizing a grandparent's right to visitation is not co-equal with that of a parent, we find the trial court's order for grandparental visitation in the present case, granting Grandparents every other weekend and extended summer visitation akin to that of a non-custodial parent, excessive and affected by an abuse of discretion.

¶ 10 Accordingly, we hold the trial court's order should be and hereby is RE-VERSED, and the cause REMANDED for further proceedings to determine under the current version of § 5 whether and under what conditions Grandparents should be granted visitation.

GARRETT, J., concurs.

CARL B. JONES, Vice Chief Judge, concurs in part and dissents in part:

I find no abuse of discretion on the part of the trial court in granting visitation.

**3.** *See also, Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (constitutional rights denote the right of an individual to establish a home and bring up children according to the dictates of conscience);*Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (law prohibiting parents from choosing private education for children unreasonably interfered with liberty of parents to direct upbringing of children); *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (constitution protects sanctity of family); *Wise v. Bravo,* 666 F.2d 1328 (10th Cir.1981) (constitution protects family rights from state interference; the latter must use narrowest and least restrictive means to effect its end).

**4.** The Supreme Court held that given the history of § 5, the legislative purpose and design underlying § 5 would be better accomplished by application of the § 5 version in existence at the time of commencement of the action, even though prior to adoption, grandparents had no statutory right to visitation with their grandchildren. The Supreme Court thus held the cause should be remanded for hearing on grandparents' visitation quest under § 5 then in effect.