2017 OK 22

**John Russell BEBOUT and James William Bebout, Plaintiffs/Appellees,**

**v.**

**Frank D. EWELL and Jack B. Ewell as Co-Personal Representatives of the Estate of Betty B. Ewell, Deceased, and William Elton Kuykendall, Jr., Defendants/Appellants.**

Case Number: 114364

Supreme Court of Oklahoma.

Decided: 03/21/2017

A.Gabriel Bass & Colin R. Barrett, Bass Law, Oklahoma City, OK, for Plaintiffs/Appellees.

Douglas D. Wilguess & Heather A. Garrett, Wilguess & Garrett, PLLC, Oklahoma City, OK, for Defendants/Appellants.

Michael W. Thom, Michael W. Thom, Attorney at Law, PC, Bethany, OK, for Defendants/Appellants.

Kraettli Q. Epperson, Mee Mee Hoge & Epperson, Oklahoma City, OK, for Amicus Curiae.

GURICH, V.C.J.

### Facts & Procedural History

¶ 1 The facts of this case are largely undisputed. R.V. Bebout died testate on March 30, 1980, as a resident of Tarrant County, Texas. His Last Will and Testament, dated March 8, 1977, was admitted in the Probate Court of Tarrant County, Texas, in the Estate of R.V. Bebout, Deceased, Case No. 80-622. At the time of his death, R.V. Bebout owned mineral interests in Canadian County, Oklahoma. On September 30, 1981, an ancillary Petition for Probate of Foreign Will was filed in the District Court of Canadian County in In the Matter of the Estate of R.V. Bebout, Deceased, Case No. P-81-137.

¶ 2 R.V. Bebout's will provided that his estate was to be distributed in trust to his wife, if she survived him. In the event his wife predeceased him, which she did, his will provided that one-half of his estate was to be distributed to his daughter, Betty Ewell, and one-half to his granddaughter, Betsy Kuykendall. The will made no mention of R.V. Bebout's son, Russell Bebout, who had predeceased him,[1] or R.V. Bebout's grandsons, John Bebout and James Bebout (Grandsons).

¶ 3 An Amended Petition for Probate of Foreign Will was filed on March 4, 1982, in the Canadian County ancillary probate action. Both the original Petition and the Amended Petition set forth the heirs, legatees, and devisees of R.V. Bebout as: Betty Ewell, Daughter; Betsy Kuykendall, Granddaughter; John Bebout, Grandson; James Bebout, Grandson. On April 1, 1982, the Court entered an Order Admitting Will to Probate and issued Letters of Administration to Jerome S. Sepkowitz, appointing him as Administrator of the Estate.

¶ 4 On September 20, 1982, the Administrator filed the Annual or Final Account of Administrator or Executor and Petition for Distribution (Final Account). The Final Account identified the heirs, legatees, and devisees of R.V. Bebout as those same individuals listed in the Petition and Amended Petition. The Final Account identified the mineral interests owned by R.V. Bebout in Canadian County as the assets to be distributed and requested that such be distributed one-half to Betty Ewell and one-half to Betsy Kuykendall, leaving no distribution to the Grandsons.

¶ 5 On that same day, the court entered an Order for Hearing of Final Account and for Distribution and Discharge, setting a hearing for October 14, 1982. The Notice for Hearing of Final Account and for Distribution and Discharge (Notice) was timely mailed to R.V. Bebout's heirs, including his Grandsons. The Notice did not include a copy of the Final Account, but referenced both the Final Account, which had previously been filed with the court, and the Petition "with will annexed," which had also been previously filed with the court.[2] On October 4, 1982, Proof of Publication of the Notice was filed of record,

---

1. Russell Bebout died on or about August 6, 1969. Record on Accelerated Appeal, Ex. 2.

2. Record on Accelerated Appeal, Ex. 9.

and on October 14, 1982, the Administrator filed a second Affidavit of Mailing Notices, again confirming that on September 20, 1982, he had mailed Notice to all of R.V. Bebout's heirs. The final hearing was held October 14, 1982. The Grandsons did not appear at the final hearing. On that same day, the court issued its Final Order Allowing Account Decree of Distribution and Discharge (Final Order). The Final Order distributed R.V. Bebout's mineral interests according to the Final Account: one-half to Betty Ewell and one-half to Betsy Kuykendall.

¶ 6 R.V. Bebout's granddaughter, Betsy Kuykendall, died testate on October 7, 1997, and an ancillary probate was administered in the District Court of Canadian County in PB-2013-29. The Final Order in the Betsy Kuykendall probate was issued October 8, 2013, and distributed her one-half interest in R.V. Bebout's minerals to her husband, William Kuykendall, Jr. R.V. Bebout's daughter, Betty Ewell, died testate on November 13, 2013. An ancillary probate was filed on January 17, 2014, in the District Court of Canadian County in PB-2014-6 and remains pending.

¶ 7 On June 25, 2014, some thirty-two years after the issuance of the Final Order in the R.V. Bebout ancillary probate, the Grandsons filed this proceeding in the District Court of Canadian County against Frank D. Ewell and Jack B. Ewell, Co-Personal Representatives of the Estate of Betty Ewell, and William Kuykendall, Jr. (Defendants). The Petition alleged that the mineral interest distribution in the R.V. Bebout Final Order was void on the face of the judgment roll to the extent it failed to distribute the mineral interests one-quarter each to the Grandsons who were pretermitted heirs. The Petition sought to quiet title to the mineral interests in the Grandsons one-quarter each as against any interest claimed by the Defendants through either the R.V. Bebout Final Order or the Betsy Kuykendall Final Order.

¶ 8 The District Court found that the R.V. Bebout Final Order was void for lack of

required notice to the Grandsons, citing this Court's decision in Booth v. McKnight, 2003 OK 49, 70 P.3d 855. The Defendants appealed, and the Court of Civil Appeals affirmed. The Defendants timely petitioned this Court for certiorari review, and a writ of certiorari was granted on October 3, 2016.

### *Standard of Review*

¶ 9 When the material facts of a case are undisputed, an order sustaining summary judgment in favor of a litigant presents solely a legal matter. Sheffer v. Carolina Forge Co., 2013 OK 48, ¶ 10, 306 P.3d 544, 547-48. Questions of law mandate a de novo standard of review, which affords this Court with plenary, independent, and non-deferential authority to examine the issues presented. Id.

### *The R.V. Bebout Final Order Was Not Void for Lack of Proper Notice*

¶ 10 Section 1038 of Title 12 provides that "[a] void judgment, decree or order may be vacated at any time, on motion of a party, or any person affected thereby." 12 O.S. 2011 1038; see also Norman v. Trison Dev. Corp., 1992 OK 67, ¶ 10, 832 P.2d 6, 10 ("A facially void judgment may be attacked at any time; it may be vacated in the very same case in which it was entered or in some collateral proceeding."). This Court has held that a probate decree "entered without proper notice is *ipso facto* facially void." Booth, 2003 OK 49, ¶ 23, 70 P.3d at 863. Defective notice must be revealed from the face of the judgment roll,[3] and "[i]f extrinsic evidence is necessary to show the jurisdictional defect, the judgment or final order is not void." House v. Town of Dickson, 2007 OK 57, ¶ 11, 193 P.3d 964, 968.

¶ 11 Grandsons maintain that pursuant to the standards for constitutionally sufficient notice announced in Booth, 2003 OK 49, 70 P.3d 855, the Notice they received was insufficient and they were deprived of their property rights without due process of law.[4] In

---

**3.** The judgment roll includes " 'the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court.' " Booth, 2003 OK 49, n.21, 70 P.3d at 859, n.21.

**4.** Plaintiff/Appellees' Answer to Appellants' Petition for Writ of Certiorari at 4.

Booth, two brothers brought a quiet title action to collaterally attack the final decree entered in their mother's probate proceeding. Their sister served as personal representative of the estate, and in the final account filed with the court before the final hearing, she sought distribution of the estate in accordance with their mother's will. Under their mother's will, the estate, which included mineral interests in Craig County, was to be distributed in equal one-third shares to each of the siblings. The brothers received the statutorily required notice of the hearing but did not attend. In settling the estate and distributing the assets, the court ordered that the estate be divided among the three siblings in equal shares "after payment of attorney's and personal representative's fees as well as the costs of administration. The court decreed that the mineral estate be awarded to the [s]ister as her personal representative's fee." [5] Thus, the final distribution did not distribute the estate in equal shares among the three siblings, but deviated from the final account prayed for in the pleadings. The brothers challenged the final order, alleging it was void for lack of constitutionally adequate notice. This Court agreed and found that a distribution other than that sought by the pleadings fatally tainted the notice provided to the brothers.

¶12 In Booth, the due process violation occurred when the probate court granted relief substantially different than the relief requested in the Petition for Final Account.

In that case, even if the brothers had received a copy of the Final Account, they still would not have been "adequately apprised of the relief [sister] would press for at the final hearing." [6] In the case before us, the judgment roll indicates the Administrator of the Estate of R.V. Bebout complied with the statutorily required notice provisions and sent Notice of the hearing to "the heirs, legatees and devisees whose addresses [were] known," and noticed was published "for two (2) consecutive weeks in a newspaper published in the county." [7] Under the statute, the Administrator was not required to mail a copy of the Final Account with the Notice of the final hearing. However, the Grandsons argue that "[i]n a probate proceeding, failure to send copies of the final account to known 'heirs (or beneficiaries)' providing notice of the personal representative's adverse demands upon the estate violates due process." [8]

■■■ ¶13 The 14th Amendment to the U.S. Constitution and Article 2, Section 7 of the Oklahoma Constitution "forbid the state from depriving any person of life, liberty, or property without due process of law." [9] The U.S. Supreme Court has held that a probate court's intimate involvement throughout the probate proceedings is "so pervasive and substantial that it must be considered state action." [10] This Court has said that because the distribution of the final estate in a probate proceeding could deprive persons of

5. Booth, 2003 OK 49, 70 P.3d at 858.

6. Id., 7, 70 P.3d at 858-59.

7. The statute in effect at the time, and which remains in effect today, provides that:
Every account for the final settlement and petition for distribution of an estate shall stand for hearing at a date to be fixed by the court, not less than twenty (20) days after the filing thereof; and notice of such hearing shall be given by mailing written or printed copies of the notice of such hearing to the heirs, legatees and devisees whose addresses are known, and deposited in the post office with the postage thereon prepaid, at least ten (10) days before the hearing, and said notice of such hearing shall also be given by publication once each week for two (2) consecutive weeks in a newspaper published in the county, showing the name of the decedent and of the executor or administrator, the date of the hearing, and that such account is for final settlement and distribu-

tion: Provided, any number of accounts may be included in one notice and the cost of publication thereof divided among the estates whose settlements are advertised therein.
58 O.S. 2011 553; see also 58 O.S. 1981 553. Section 557 of Title 58 also provides that "[t]he account must not be allowed by the court until it is first proved that notice has been given as required by this article, and the decree must show that such proof was made to the satisfaction of the court, and is conclusive evidence of the fact." 58 O.S. 2011 557.

8. See Record on Accelerated Appeal, Ex. 10, at 3.

9. Booth, 2003 OK 49, ¶18, 70 P.3d at 862 (citing U.S. Const. amend. XIV; Okla. Const. art. 2, 7).

10. Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 490-92, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

protected property rights, such proceeding constitutes state action and is subject to full due process protection.[11] Due process requires notice that is "reasonably calculated to inform interested parties of the pending action and of every critical stage so as to afford them an opportunity to defend or to meet the issues at a meaningful time and in a meaningful manner."[12] The critical inquiry is whether "[t]he person to be affected [was] fairly and timely apprised of what interests [were] sought to be reached by the triggered process. Notice and an opportunity to be heard must be provided in such a way that a person can intelligently decide in advance whether to appear at the hearing and contest the matters in issue or acquiesce in their *in abstentia* resolution and assume the risk from consequences attendant upon a default." Booth, 2003 OK 49, ¶ 18, 70 P.3d at 862.

¶ 14 Upon consideration, we cannot agree with the Grandsons that a copy of the final account must be mailed in order to satisfy constitutional notice requirements. The Notice sent to the Grandsons in this case provided:

NOTICE FOR HEARING OF FINAL ACCOUNT AND FOR DISTRIBUTION AND DISCHARGE
No. P-81-137
State of Oklahoma, Oklahoma County, ss.
In the District Court Within and for Said County and State
In the Matter of the estate of R.V. Bebout, Deceased.
Notice is hereby given that Jerome S. Sepkowitz, administrator with will annexed of the estate of R.V. Bebout, deceased, **having filed in this Court his final account of the administration of said estate and his petition for the determination of heirs and for distribution of said estate and for final discharge of said administrator with will annexed,** the hearing of the same has been fixed by the Judge of said Court for the 14th day of October, 1982, at 9 o'clock A.M., at the Court Room of said Court in the County Court House at El Reno, in the County and State aforesaid, and **all persons interested in said estate are notified then and there to appear and show cause, if any they have, why said account should not be settled and allowed, the heirs determined, and said estate distributed and the administrator with will annexed . . . .**[13]

The Notice mailed to the Grandsons undoubtedly informed them of the date, time, and place of the hearing. The Notice also apprised the Grandsons that their grandfather's estate was to be settled at the hearing and that "all persons" interested had to appear to dispute the proposed distribution. Critically, the Notice informed the Grandsons that the Final Account and Petition "with will annexed" were on file with the court and that "said account" would be settled and allowed, putting the Grandsons on further inquiry notice. Had they investigated the matter by either inspecting the documents in the court file or attending the hearing, they could have easily ascertained that the entire estate was to be distributed one-half to Betty Ewell and one-half to Betsy Kuykendall and that nothing was to be left to either of them. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." 25 O.S. 2011 13. We conclude that the Notice the Grandsons received was constitutionally sufficient, and thus, the Final Order entered in the Estate of R.V. Bebout was not void for lack of proper notice.[14]

### Mistakes of Law Do Not Render the Final Order Void

¶ 15 The Grandsons also argue that under the law regarding pretermitted heirs,

---

11. Booth, 2003 OK 49, ¶ 19, 70 P.3d at 862.

12. Matter of Estate of Pope, 1990 OK 125, ¶ 3, 808 P.2d 640, 642.

13. Record on Accelerated Appeal, Ex. 9 (emphasis added).

14. To the extent certain language in the Booth case indicates that a copy of the Final Account must be mailed to the heirs to satisfy due process, we find such language is dicta and does not reflect the actual holding in that case.

the court was required by law to vary the distribution to include the pretermitted heirs regardless of the distribution prayed for in the Final Account and set forth in the testator's will.[15] Assuming the Grandsons were in fact pretermitted heirs and assuming the court erroneously omitted the Grandsons from the distribution of the estate under the statute, the court's failure to include the Grandsons in the distribution is a mistake of law that does not subject the final order to vacation at this point. "[A] judgment is 'no less conclusive because it is based upon a mistake of law.' An error does not render the judgment void." Estate of Mouse, 1993 OK 157, 864 P.2d 1284, 1286.

¶ 16 The record also indicates the Grandsons were ages sixteen and seventeen and were residents of the state of Colorado at the time the ancillary probate was filed. Section 710 of the probate code allows the court to appoint an attorney to represent heirs to an estate "who are minors and have no general guardian in the county, or who are nonresidents of the state, and those interested, who, though they are neither such minors or nonresidents, are unrepresented."[16] The judgment roll does not reflect whether the trial court appointed an attorney to represent either of the Grandsons before the Final Order was entered distributing R.V. Bebout's estate. However, the record indicates that at least one of the Grandsons

had turned eighteen by the time the Final Order was entered, and neither of the Grandsons disputes that the statutorily required notice was sent to them or that they received such. Even if we were to conclude the probate court abused its discretion by not appointing an attorney to represent the minor, nonresident Grandsons, such abuse of discretion would, again, be a mistake of law not subject to correction thirty years after the fact. The Grandsons had only one year upon reaching the age of majority to challenge the Final Order. See 12 O.S. 2011 700; see also 58 O.S. 2011 67; Gassin v. McJunkin, 1935 OK 629, 173 Okla. 210, 48 P.2d 320 (finding that although the pretermitted heir was a minor at the time the final order was entered, she received proper notice under the statute, and thus, had only one year from the time she attained majority to seek vacation of the decree). As we said in Booth: "Facially valid adjudications of a district court sitting in probate stand immune from collateral attack to the same extent as any other judgment. A court's power to decide a case includes the power to decide wrongly. When a court exercises judicial power over a subject, its judgment must stand undisturbed unless challenged by a timely appeal."[17]

### Conclusion

¶ 17 Because the final distribution of an estate could deprive interested persons of

---

**15.** Grandsons cite 84 O.S. 2011 132, which provides: "When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section."

**16.** Section 710 is discretionary and was in effect at the time the 1982 Final Order was entered. The 2011 version of 710, which remains unchanged from the 1982 version, provides:

At or before the hearing of petitions and contests for the probate of wills; for letters testamentary or of the administration; for sales of real estate and confirmation thereof; settlements, partitions and distributions of estates; and all other proceedings where all the parties interested in the estate are required to be notified thereof, the court may, in its discretion, appoint some competent attorney-at-law to represent in all such

proceedings the devisees, legatees, heirs, or creditors of the decedent, who are minors and have no general guardian in the county, or who are nonresidents of the state, and those interested, who, though they are neither such minors or nonresidents, are unrepresented. The order must specify the names of the parties for whom the attorney is appointed, who is thereby authorized to represent such parties in all such proceedings had subsequent to his appointment. The attorney may receive a fee to be fixed by the court for his services, which must be paid out of the funds of the estate as necessary expenses of administration, and upon distribution may be charged to the party represented by the attorney. If for any cause it becomes necessary, the district court may substitute another attorney for the one first appointed, in which case the fee must be proportionately divided. The nonappointment of an attorney will not affect the validity of any of the proceedings.
58 O.S. 2011 710.

**17.** Booth, 2003 OK 49, ¶ 10, 70 P.3d at 859-60.

certain protected property interests, it is of the utmost importance that constitutionally sufficient notice be provided to such persons. Of no less importance, however, is the stability of the law in connection with real property and titles to lands in this state.[18] Being mindful of these important and competing considerations, we conclude the Grandsons received constitutionally sufficient notice in this case even though they were not mailed a copy of the Final Account. The Final Order entered in the Estate of R.V. Bebout was not void for lack of proper notice, and the Grandsons' challenge to that Final Order more than thirty years later is untimely.

**COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S ORDER REVERSED; CAUSE REMANDED**

¶18 ALL JUSTICES CONCUR

---

18. See <u>Factor v. Perkins</u>, 1933 OK 330, 164 Okla. 20, 22 P.2d 391, 394.