RHODES v. HERNANDEZ



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:RHODES v. HERNANDEZ

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 RHODES v. HERNANDEZ
2021 OK CIV APP 14
488 P.3d 762
Case Number: 117953
Decided: 09/04/2020
Mandate Issued: 04/21/2021
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2021 OK CIV APP 14, 488 P.3d 762

 

BILLY L. RHODES, Plaintiff/Appellee,
v.
CORNELLIO HERNANDEZ, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE WILLIAM J. HIDDLE, TRIAL JUDGE

AFFIRMED

Jon D. Starr, Bradley E. Bowlby, STARR, BEGIN & KING, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellee

James L. Colvin, III, Connor E. Brittingham, LATHAM, STEELE, LEHMAN, KEELE, RATCLIFF, FREIJE & CARTER, P.C., Tulsa, Oklahoma, for Defendant/Appellant

P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶1 Cornellio Hernandez appeals the entry of a protective order forbidding any contact or interaction with Billy L. Rhodes. On review, we find no error in the court's decision.

BACKGROUND

¶2 On October 2, 2018, Rhodes filed case No. PO-2018-3444, alleging a pattern of physical assaults and harassment by co-worker, Hernandez. Rhodes' briefing states that he had previously reported these acts to his employer, who had refused to take any action, and that his employer told him to withdraw his application or he would be fired. Rhodes did not do so, and Rhodes' briefing states that he was dismissed as a result. Hernandez appeared pro se at the October 16, 2018, hearing on a permanent order. We have no record of the hearing; but the docket sheet states that:

JUDGE MILLER: PLAINTIFF PRESENT, REPRESENTED BY BRAD BOWLEY, PRESENT, DEFENDANT PRESENT, PRO SE.

FINAL PROTECTIVE ORDER GRANTED FOR SELF FOR FIVE YEARS. COSTS TO THE DEFENDANT.

DEFENDANT IS TO REMAIN 100 YARDS FROM THE PLAINTIFF AND HOME AT ALL TIMES.

THIS IS BY AGREEMENT AND WITHOUT OBJECTION FROM THE DEFENDANT.

¶3 More than three months later Hernandez, now represented by counsel, appears to have had a change of heart, and filed a petition to vacate the protective order, alleging a lack of jurisdiction by the court and a denial of fundamental due process. The basis for Hernandez's petition was that Rhodes had filled in the wrong box on the standard protective order petition, ticking the box for "harassment" rather than "stalking." Hernandez argues that the court did not gain subject matter jurisdiction because of this error.[1] He also argued that the resulting order made on the basis of "stalking" was a violation of the constitutional due process requirement of notice because the "stalking" box was not ticked. The court denied the petition to vacate. Hernandez now appeals.

STANDARD OF REVIEW

¶4 We review proceedings under the Protection from Domestic Abuse Act, 22 O.S.2011 & Supp. 2019 §§ 60 through 60.20, for an abuse of discretion. Curry v. Streater, 2009 OK 5, ¶ 8, 213 P.3d 550. "Under the abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law." Id. Also, "[s]tatutory construction presents a question of law which we review de novo." Id.; see also Allen v. Castillejo, 2019 OK CIV APP 51, ¶ 6, 449 P.3d 1287.

ANALYSIS

¶5 This case appears to present a single issue of law. Hernandez does not appear to dispute Rhodes' allegations of physical attacks and offensive remarks, but argues that his due process rights were violated because Rhodes ticked the box for "harassment" rather than "stalking" on his petition. The first definition of "stalking," found at 22 O.S. Supp. 2019 § 60.1(9)(renumbered from § 60.1(2)), is as follows:

"Stalking" means the willful, malicious, and repeated following or harassment of a person by an adult, emancipated minor, or minor thirteen (13) years of age or older, in a manner that would cause a reasonable person to feel frightened, intimidated, threatened, harassed, or molested and actually causes the person being followed or harassed to feel terrorized, frightened, intimidated, threatened, harassed or molested.

The undisputed facts would clearly allow a court to find that Hernandez engaged in "harassment of a person by an adult . . . in a manner that would cause a reasonable person to feel frightened, intimidated, threatened, harassed . . . ."

¶6 Hernandez appeals entirely on a proposition of law--that the district court had no jurisdiction to issue a protective order on the basis of "stalking" because Rhodes' initial application checked the box alleging "harassment" rather than the box alleging "stalking." Hernandez argues that, because Rhodes is not a "family member" or in a "dating relationship," he cannot have statutorily "harassed" Rhodes pursuant to the definition of harassment,[2] and he had no constitutional notice that Rhodes was actually alleging a viable "stalking" claim rather than an unviable "harassment" claim.[3]

¶7 Hernandez cites numerous cases for the general proposition that notice is a requirement of due process and that a protective order may be overturned on appeal, which we find uncontroversial. As far as specific cases that may address the current situation, however, Hernandez cites Baker v. Baker, 1995 OK CIV APP 111, 904 P.2d 616, as holding that ticking the box marked "stalking" on the application form, is a prerequisite of both subject matter jurisdiction and due process being satisfied before issuing a protective order on the basis of stalking.

¶8 "Due process requires notice that is reasonably calculated to inform interested parties of the pending action and of every critical stage so as to afford them an opportunity to defend or to meet the issues at a meaningful time and in a meaningful manner." Bebout v. Ewell, 2017 OK 22, ¶ 13, 392 P.3d 699 (footnote and internal quotation marks omitted). "Notice and an opportunity to be heard must be provided in such a way that a person can intelligently decide in advance whether to appear at the hearing and contest the matters in issue or acquiesce in their in absentia resolution and assume the risk from consequences attendant upon a default." Id. (quoting Booth v. McKnight, 2003 OK 49, ¶ 18, 70 P.3d 855).

¶9 In Baker, the lack of such constitutional notice was obvious. The mother filed a "Petition for Protective Order" alleging abuse by the estranged father. An emergency ex parte protective order was issued the same day, and the matter was set for hearing. For reasons that are not explained, the court also told the mother that "she would probably have to pay half the court costs and [have] a protective order issued against her also." 1995 OK CIV APP 111at ¶ 4. The parties appeared pro se at the scheduled hearing, after which the trial court entered a protective order against both parties and ordered each to pay one-half the court costs, despite the fact that the father had not filed for a protective order in the first instance. 

¶10 The mother filed a motion to vacate the protective order against her, which the court denied on the grounds that the mother's petition showed that she had also committed harassment against the father. COCA reversed, holding, "It is elementary and fundamental that the phrase 'due process of law' encompasses more than a party's right to be heard; it begins with a party's right to notice of the pendency of an action against them, and of the nature of any relief sought." Id. ¶ 14.

¶11 Hernandez argues that the failure to tick the box marked "stalking" on the form in this case is equivalent to the father's failure to file or serve any request for relief at all in Baker. We disagree. Hernandez cites Baker primarily for its comment at ¶ 16 that:

Unless those specific procedures are followed to notify a party of the pendency of allegations against her, and the nature of any relief sought, the trial court lacks authority to amend the pleadings to conform to evidence of conduct allegedly committed by that party. As a result, a protective order against the party whose due process rights have been violated may not be issued.

¶12 This comment should be assessed in the light of the situation presented in Baker, however. In that case, the father did not request a protective order or file any paper that could commence an action. The trial judge appears to have decided, sua sponte, that an order against the mother was necessary. We quite agree that granting relief to a party who has neither commenced a case, nor filed a counterclaim, nor served the other party, offends the constitutional requirement of notice calculated to inform that party of the claims against him/her. Filing the "petition form[] . . . provided by the clerk of the court" pursuant to 22 O.S. § 60.2 is a requirement to seek a protective order, just as filing a petition pursuant to 12 O.S. § 2004 is a requirement to commence a general action in the district court.

¶13 Hernandez argues, however, for an extension of Baker beyond these facts, arguing that the phrase, "unless those specific procedures are followed to notify a party of the pendency of allegations against her, and the nature of any relief sought," essentially reinstates code pleading as a jurisdictional requirement in cases under the Protection from Domestic Abuse Act. The Legislature did not state an exemption from the pleading code in the Act. Rather, Hernandez construes Baker as instituting strict pleading in protective order cases as a matter of constitutional due process. 

¶14 If Baker found strict pleading to be a requirement of constitutional due process in this area, it is difficult to see how any part of Oklahoma's notice pleading regime is constitutional. We can see no significant difference between filing a petition pleading acts and circumstances that show stalking but failing to check the correct box on the form and filing a petition pleading acts and circumstances that show negligence but failing to state that the plaintiff is filing a negligence claim. The latter is clearly allowed under the Oklahoma pleading code. Our impression is that Baker went substantially beyond the facts of the case by stating as a general proposition that "the trial court lacks authority to amend the pleadings to conform to evidence of conduct allegedly committed by that party." Trial courts in fact have that authority. The trial judge in Baker, however, did not "amend the pleadings" in any accepted meaning of the phrase. The trial judge created a cause of action, sua sponte, on behalf of a party who had not filed a petition or sought any relief. There was no pleading by the father to "amend."

¶15 The court's actions in Baker can be more closely analogized to a court filing a counterclaim on behalf of a defendant because the court feels that the evidence would support such a claim. We agree entirely that this is outside the power of the court. The acts of the court in Baker were not a simple amendment of the pleading to conform to the evidence, but the sua sponte creation of a cause of action on behalf of a party who had not filed a claim for relief. If Baker did intend to rule beyond the facts of that case and declare that the Legislature intended to exclude cases under the Protection from Domestic Abuse Act from both the general rules of pleading and the general rules of procedure (which we doubt), we find no statutory basis or supporting case law for this holding. Nor has Baker been cited as imposing such strict restrictions since it was decided.

¶16 Baker has been cited four times in the 25 years since it was decided. Martinez v. State ex rel. Dep't of Pub. Safety, 2010 OK CIV APP 11, ¶ 16, 229 P.3d 584, dealt with fundamental notice questions similar to those presented in Baker, and held that the trial court properly interpreted the implied consent statute to require DPS to give both actual notice of the revocation and notice of the licensee's right to request an administrative hearing. Watts v. Hensley, 2000 OK CIV APP 41, ¶ 5, 4 P.3d 45, cited Baker only for its standard of review. McGuire v. Morrison, 1998 OK CIV APP 128, ¶ 4, 964 P.2d 966, cited Baker for the statement that "due process requires adequate notice, a realistic opportunity to appear and the right to participate in a meaningful manner." Alford v. Garzone, 1998 OK CIV APP 105, ¶ 6, 964 P.2d 944, agreed with Baker that issuing a "mutual" protective order when only one party had petitioned for an order violated the petitioning party's right to due process of law.

¶17 No case, however, has cited Baker as imposing the strict pleading requirements and shackling a court as Hernandez suggests. Indeed, given that the husband filed no petition at all in Baker, any comments going to the proper form or content of what he could have filed are likely dicta. We do not interpret Baker as rendering Rhodes' filed and served petition a violation of constitutional due process.

¶18 Hernandez also cites Gibilisco v. Gibilisco, 1994 OK CIV APP 50, 875 P.2d 447, as instructive. Gibilisco, however, reaches the same conclusion as Baker, that "filing a petition for a protective order with the district court" is a prerequisite to the court's jurisdiction, and that "Husband wholly failed to comply with the statutory prerequisites for the issuance of a protective order. He failed to file a petition, he failed to schedule a hearing, and he failed to serve Wife with a copy of the petition and notice of hearing." 1994 OK CIV APP 50at ¶ 7. That is not the situation here. We find no applicability of Baker in this matter.

¶19 We further note that, although we have no transcript or narrative statement of the hearing, we may take judicial notice of the docket sheet, which states that the protective order "IS BY AGREEMENT AND WITHOUT OBJECTION FROM THE DEFENDANT." Hernandez does not appear to dispute this agreement. Defenses of lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief can be granted, or lack of capacity of a party to be sued may be waived pursuant to 12 O.S. § 2012(A). Only the defenses of a lack of jurisdiction over the subject matter, another action pending between the same parties for the same claim, failure to join an indispensable party, and lack of capacity of a party to sue cannot be waived by a defendant. The only one of those defenses Hernandez could raise is a lack of subject matter jurisdiction.

¶20 Hence, if we accept this apparent waiver, Hernandez must show that checking the "harassment" box instead of checking the "stalking" box deprived the court of subject matter jurisdiction. The courts of Oklahoma are courts of general jurisdiction.[4] Even if Rhodes' petition could be construed as failing to state a viable claim because the wrong box was ticked, this does not deprive the court of subject matter jurisdiction. We reject the arguments that subject matter jurisdiction was not conferred by Rhodes' petition in this matter.

¶21 Finally, we also have no record of what occurred at the hearing. Hernandez argues that whatever occurred at the hearing is irrelevant, because the wrong box was ticked on the initial petition. This argument raises substantial implications in an area where pro se litigation (and presumably improperly filled out forms) are common. Hernandez's "strict pleading" would require a court to dismiss a protective order petition sua sponte at hearing if a pro se plaintiff has failed to comprehend the exact legal niceties of "harassment" versus "stalking" when choosing a box on the prescribed form, even if, as occurred in this case, the defendant does appear to have stalked the plaintiff and agreed to the order. Given that this would also dissolve the temporary protective order, leaving the victim entirely unprotected until the matter can be refiled, this outcome appears entirely contrary to the public policy expressed in the Protection from Domestic Abuse Act.

CONCLUSION

¶22 On review, we find no jurisdictional or constitutional infirmity in the district court's decision, and we affirm it.

¶23 AFFIRMED.

WISEMAN, C.J., and HIXON, J., concur.

 

FOOTNOTES

[1] "Harassment" under that section of the form is limited to relations between family members or persons in a dating relationship.

[2] The argument that harassment is an entirely separate claim from stalking is complicated by the wording of the statute, which defines "stalking" as "the willful, malicious, and repeated following or harassment of a person" by someone who is not in the required family or dating relationship (emphasis added).

[3] We have no record or narrative statement of the protective order hearing and hence no knowledge whether "stalking" was alleged or discussed at that hearing. We also have no transcript of any hearing on the motion to vacate.

[4] Courts in this state possess inherent powers to regulate the procedure by which rights are judicially enforced. For example: "The courts of general jurisdiction under such a Constitution have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property, or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require." State v. Martin, 1927 OK 147, ¶ 5, 256 P. 681; see also, Puckett v. Cook, 1978 OK 108, ¶¶ 11-12, 586 P.2d 721.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2021 OK CIV APP 42, OSBORN v. STIGER
Discussed at Length


 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1994 OK CIV APP 50, 875 P.2d 447, 65 OBJ 1979, Gibilisco v. Gibilisco
Discussed at Length
 1995 OK CIV APP 111, 904 P.2d 616, 66 OBJ 3207, Baker v. Baker
Discussed at Length
 2010 OK CIV APP 11, 229 P.3d 584, MARTINEZ v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 2019 OK CIV APP 51, 449 P.3d 1287, ALLEN v. CASTILLEJO
Discussed
 2000 OK CIV APP 41, 4 P.3d 45, 71 OBJ 1334, WATTS v. HENSLEY
Discussed
 1998 OK CIV APP 105, 964 P.2d 944, Alford v. Garzone
Discussed
 1998 OK CIV APP 128, 964 P.2d 966, 69 OBJ 3282, McGuire v. Morrison
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2003 OK 49, 70 P.3d 855, BOOTH v. McKNIGHT
Discussed
 2009 OK 5, 213 P.3d 550, CURRY v. STREATER
Discussed
 1978 OK 108, 586 P.2d 721, PUCKETT v. COOK
Discussed
 2017 OK 22, 392 P.3d 699, BEBOUT v. EWELL
Discussed
 1927 OK 147, 256 P. 681, 125 Okla. 24, STATE ex rel. AG v. MARTIN
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2004, Process
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 60, Short Title
Cited
 22 O.S. 60.1, Definitions
Cited
 22 O.S. 60.2, Protective Order - Petition - Form - Filing Fee - Preparation - Protection of Animal
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA